## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 16 2018, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey W. Elftman
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dion Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 16, 2018

Court of Appeals Case No.
18A-CR-542

Appeal from the Howard Superior Court

The Honorable William C. Menges, Jr., Judge

Trial Court Cause Nos.
34D01-1105-FA-439
34D01-1407-F4-561
34D01-1408-F5-636

**Mathias, Judge.**

[1] The Howard Superior Court ordered the release of Dion Jones ("Jones") from prison on supervised probation on the condition that he complete a re-entry court program. As a condition of his admission into the re-entry program, Jones agreed to waive his right to any credit for time spent in custody while in the program. The trial court terminated Jones from the re-entry program for violating its rules. When the court revoked Jones's probation three months later, it awarded Jones credit for the three months he spent in prison from the date of his termination from the re-entry program, but not for the earlier period Jones spent in prison awaiting the court's decision to terminate him from the re-entry program.

[2] On appeal, Jones argues that he had a statutory right to credit for the time he spent in custody before his termination from the re-entry program, and that his agreement to waive his right to this credit time should not be enforceable because he did not derive a substantial benefit from being permitted into the re-entry program. We hold that the waiver was valid and affirm the trial court's sentencing order.

## Facts and Procedural History

[3] On February 23, 2016, Jones—then serving an aggregate sentence of twelve years in the Department of Correction for three separate drug-related offenses[1]—filed a petition to modify his sentence. On April 5, 2016, the trial

---

[1] On April 22, 2015, Jones pleaded guilty under Cause No. 34D01-1407-F4-561 to Dealing in Cocaine, a Level 4 felony, for which he was sentenced to ten years in prison. Appellant's App. pp. 121, 125. The same

court approved Jones's release from prison into a community transition program and ordered the balance of Jones's sentences suspended to probation. As a condition of Jones's release from prison on supervised probation, Jones was ordered to successfully complete the Howard County Re-entry Court Program ("the Re-entry Program"). Upon his admission into the Re-entry Program, Jones executed an agreement, filed with the court on April 27, 2016, in which he agreed to comply with the program's terms and conditions. This agreement contained the following provision:

> Participant agrees to waive his right to earn credit time for any time spent in jail or otherwise confined to which he would otherwise be entitles [sic] pursuant to Indiana law during participation in the Reentry Program.

Appellant's App. p. 154. On June 15, 2016, the trial court found that Jones had violated the terms and conditions of the Re-entry Program, held him in indirect contempt, and ordered him taken into custody. The record is unclear if Jones ever was taken into custody in 2016.

[4] On August 21, 2017, Jones was again held in indirect contempt for violating a term of the Re-entry Program and was again ordered taken into custody. On August 23, Howard County Community Corrections filed notice of its intent to

---

day, Jones was convicted under Cause No. 34D01-1408-F5-636 to Possession of Cocaine, a Level 5 felony, and sentenced to three years in prison. *Id.* at 123. These two sentences were to run concurrently to each other and consecutively to a sentence of two years under Cause No. 34D01-1105-FA-00439, which was for an older conviction for Class A felony Dealing in Cocaine. *Id.* at 120.

terminate Jones from the Re-Entry Program for lying to his case manager about where he was living and violating the rules of the program, which required Jones to keep his case manager apprised of his current address. The court held an evidentiary hearing on the matter on September 27, 2017, and on November 14, the court found that the State had proved by a preponderance of the evidence that Jones had lied about where he was living and ordered Jones's termination from the Re-entry Program.

[5] Later that day, the State filed a petition to revoke Jones's suspended sentence and probation for failing to complete the Re-entry Program, which the court had required as a condition of Jones's suspended sentence. On February 13, 2018, the court revoked Jones's probation and ordered the balance of his sentence to be served in the Department of Correction. The court awarded Jones credit time for the ninety-one days he had spent incarcerated since his termination from the Re-Entry Program on November 14, 2017. However, the court denied his counsel's request for credit for the time Jones time spent in custody between August 23, 2017 and his termination from the Re-Entry Program on November 14, finding that Jones was not entitled to credit time until after his termination from the program. Jones now appeals.

## Standard of Review

[6] In general, imposing sanctions for probation violation lies within the trial court's sound discretion, and we will reverse only for abuse of that discretion. *Hickman v. State*, 81 N.E.3d 1083, 1085 (Ind. Ct. App. 2017) (citing *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013)). A trial court abuses its

discretion by ruling in a way clearly against the logic and effect of the facts and circumstances before it, or by misinterpreting the law. *Id.* Because credit time is a matter of statutory right, if a trial court finds that a person comes within the statutory entitlement, the court has no discretion in awarding it. *Id.* (citing *Purdue v. State*, 51 N.E.3d 432, 436 (Ind. Ct. App. 2016)).

## Discussion and Decision

On appeal, Jones argues that he had a statutory right to credit for the time he spent in custody before his termination from the Re-entry Program and argues that it was not within the trial court's discretion to deny him this credit time.[2] Further, while Jones acknowledges that he agreed to waive his right to credit for time spent in custody while participating in the program, Jones attacks the validity of this waiver, which he argues should be unenforceable because he did not derive a substantial benefit from his participation in the Re-entry Program.

The State contests Jones's claim that he enjoyed a statutory entitlement to credit time, citing *Perry v. State*, 13 N.E.3d 909, 911–12 (Ind. Ct. App. 2014),

---

[2] At his sentencing, Jones's counsel argued only that Jones should be entitled to credit for the period he spent in custody between August 23, 2017, and his termination from the Re-entry Program on November 14, 2017. Tr. pp. 61–62. On appeal, Jones also argues that he was entitled to credit for any time he may have spent in custody following his first violation of the Re-entry Program's rules in 2016. While the trial court did order Jones taken into custody on June 15, 2016, the record is silent as to how much (if any) time Jones spent in custody for this first violation of the Re-entry Program's rules. As Jones did not raise the argument that he was entitled to credit for any other period below, it is waived on appeal. *See Smylie v. State*, 823 N.E.2d 679, 689 (Ind. 2005) (noting that a claim is generally considered forfeit if it is not objected to at trial). However, waiver notwithstanding, if any such period of incarceration existed, it would have been during his participation in the Re-entry Program. Therefore, the analysis for this indeterminate period and the period from August 23, 2017, to November 14 is the same, and whether Jones was entitled to credit time for either period turns on the validity of the waiver.

where we held that Indiana Code section 35-50-6-3, which provides a right to credit for time spent in confinement while "awaiting trial or sentencing," did not entitle the defendant to credit for time spent on electronic monitoring during his participation in a drug court program. *Perry*, 13 N.E.3d at 911–12. (citing *Meadows v. State*, 2 N.E.3d 788, 792–94 (Ind. Ct. App. 2014)). The State argues that because Jones, like the defendant in *Perry*, is seeking credit for time spent during his participation in a program, he was not "awaiting trial or sentencing" when he was incarcerated for violating the Re-entry Program's rules. Appellee's Br. at 9. Emphasizing that the Re-entry Program in his case was a probation program rather than a pre-conviction deferral program like the drug court program in *Perry*, the defendant argues that "the statutes governing right to credit time should apply." Appellant's Br. at 11. However, we need not resolve the dispute about whether a statutory right to credit time existed because we conclude that Jones's waiver was valid.

[9] Arguing that his waiver should be held unenforceable, Jones cites to but attempts to distinguish *House v. State*, 901 N.E.2d 598 (Ind. Ct. App. 2009). In *House*, the defendant appealed the denial of credit for the time he spent on work release and in custody as sanctions for violating the rules of his drug court program. *Id.* at 600–601. The defendant in *House* executed an agreement when he entered the drug court program in which he agreed to waive his right to credit time. *Id.* at 599. In holding that the *House* defendant's credit time waiver was valid, we cited *Creech v. State*, 887 N.E.2d 73 (Ind. 2008), where our supreme court held that a defendant could waive their right to direct appeal in a

plea agreement, which was justified on the ground that such a waiver could be of "substantial benefit to both the defendant and society." *House*, 901 N.E.2d at 600 (citing *Creech*, 887 N.E.2d at 75); *see also United States v. Hare*, 269 F.3d 859, 861 (7th Cir. 2001) (noting that avoiding appeals can save the State considerable time and expense, and that defendants may value the State's concessions in exchange for this benefit more than the right to appeal). In *House*, we reasoned that the defendant likewise gained substantial benefits by being allowed to participate in a drug court program, the successful completion of which would result in his conviction and sentence being set aside. 901 N.E.2d at 601. We further held that this substantial benefit justified the defendant's waiver of his right to credit time. *Id.*[3]

[10] Jones argues that because his Re-entry Program was not a pre-conviction deferral program like the drug court program discussed in *House,* his participation in it did not provide substantial benefits, and his waiver should therefore be held invalid. In further support of his argument that such deferral programs do not provide special benefits which uniquely justify foregoing credit

---

[3] The defendant in *House* also argued that he did not understand the waiver provision when he signed the drug court program's participation agreement. 901 N.E.2d at 600. Noting that the defendant did not claim to have been coerced or misled into signing the agreement, we held that the signed agreement was sufficient to establish that the waiver was knowing and voluntary. *Id.* at 601 & n.2. In the instant case, Jones likewise does not assert that he was coerced or misled into signing the Re-entry Program participation agreement. He does make the ambiguous statement that his decision to "waive his rights was not a bargained for exchange between himself and the State of Indiana with a hope of deferral upon completion, but a plea to the court to receive some lessening of supervision which resulted in the requirement he waive his right to credit time." Appellant's Br. at 11. If this was intended to suggest that Jones did not understand the waiver when he executed the Re-entry Program participation agreement, we conclude that such an argument fails for the same reasons as the defendant's voluntariness argument in *House*.

time, he cites *Perry* and *Meadows*, *supra*. In those cases, we held that various statutes did not grant the defendants a right to credit for time spent on electronic monitoring while participating in their respective drug court programs, noting some of the benefits and drawbacks of deferral programs to explain the policy supporting this holding. *See Perry*, 13 N.E.3d at 911–12 (noting that not receiving credit for time on electronic monitoring is one of the negative consequences for failing to successfully complete a drug court program); *Meadows*, 2 N.E.3d at 792–94 (noting that deferral programs provide "an opportunity for those qualified to avoid conviction and sentence, but only if they comply with the conditions of the program.").[4] Jones's reliance on these cases is misplaced.

[11] While *Perry* and *Meadows* both discussed the differences between deferral programs and post-conviction programs, neither case involved a waiver, and both cases analyzed the separate question of whether a statutory right to credit time existed in the first place. *Perry*, 13 N.E.3d at 911–12; *Meadows*, 2 N.E.3d at 792–94. *House* also discussed the benefits of deferral programs and held that these benefits justified allowing a defendant to waive their right to credit time,

---

[4] These cases also considered the distinction between deferral programs and post-conviction programs relevant because certain statutes, by their terms, do not apply to deferral programs. For example, in *Meadows*, we held that Indiana Code section 35-38-2.6-6(a), which provides that a person "placed in a community corrections program under this chapter is entitled to earn credit time," only applied to people placed in such programs following conviction, not people entering them as a condition of deferral, because the entire chapter "applies to the *sentencing* of a *convicted* person." 2 N.E.3d at 792 (citing I.C. § 35-38-2.6-1(a)) (emphasis in original).

but it did not discuss other kinds of programs or support the negative inference that Jones tries to establish, namely, that post-conviction programs do not offer substantial benefits. *See House*, 901 N.E.2d at 600–601.

[12] Jones points out that unlike with pre-conviction deferral programs, his successful completion of the Re-entry Program would not prevent him from having a criminal conviction on his record or from having to serve the remainder of his sentence on probation. While this is true, and pre-conviction deferral programs do certainly offer substantial benefits, it does not follow that Jones did not receive substantial benefits by being allowed to participate in the Re-entry Program. Contingent upon his completion of the Re-entry Program, the trial court granted Jones the opportunity to serve his sentence on probation, leave prison, and reintegrate into society. In exchange for these benefits, Jones agreed to waive his right to credit for time spent in custody during his participation in the program. Requiring participants in probation programs to waive their rights to credit time can also create a disincentive for violating the program's terms, beyond revocation of probation only, and should help deter defendants from entering into such programs without a commitment to following their rules because they have nothing to lose.

[13] "The grant of probation or conditional release is a favor granted by the State, not a right to which a criminal defendant is entitled." *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997) (quoting *Menifee v. State*, 600 N.E.2d 967, 969 (Ind. Ct. App. 1992), *decision clarified on denial of reh'g,* 605 N.E.2d 1207 (Ind. Ct. App. 1993)). Jones had no right to release on probation, and it was within the

trial court's discretion to grant Jones probation on the condition that he complete the Re-entry Program. Jones derived substantial benefits from his participation in the Re-entry Program, and there is no evidence that his agreement in exchange to waive his right to credit time was unknowing or involuntary. Thus, we hold that the wavier was valid.

## Conclusion

[14] We conclude that Jones expressly waived any rights he may have had to credit for time he spent in prison awaiting the trial court's decision to terminate him from the Re-entry Program. We further conclude that this waiver was valid, and that the trial court's decision to deny Jones this credit time was consequently within its discretion. We therefore affirm the trial court's sentencing order.

[15] Affirmed.

Bailey, J., and Bradford, J., concur.